## Case No. 7,634.

### The KEARSARGE.

### [1 Ware, 546.] [1]

District Court, D. Maine. Jan. 3, 1855.[2]

MARITIME LIENS—CONSTRUCTION OF VESSEL.—MATERIAL FURNISHED — WAIVER OF LIEN BY GIVING CREDIT—LIEN FOR INSURANCE — MATERIAL USED IN TWO VESSELS—CREDITOR OF BUILDER.

1. The lien given to material men, mechanics, and laborers, by chapter 125, § 35, of the Revised Statutes of Maine, for materials furnished and labor performed for and on account of a vessel, is not restricted to mechanics and laborers, but extends to merchants and all persons who render like services.

2. It does not cover charges for tools or other articles used by the workmen in doing the work, but only materials which go into the ship and make part of it when finished.

[Cited in Woolly v. The Peruvian, Case No. 18,031.]

[Cited in Barstow v. Robinson, 2 Allen, 606.]

3. It does not extend to a merchant who procures insurance on a cargo of timber purchased for and used in the construction of the ship, such a person not being in the sense of the law a furnisher of materials.

4. A credit given to the builder is not necessarily a waiver of the lien, but is only so when it is inconsistent with it.

5. If the lien is limited in time, and the credit extends beyond the duration of the lien, it is an absolute waiver; but if the terms of credit may expire before the lien does, then whether the lien is waived or not is a question of intention.

6. If the owner is building two vessels at the same time, and materials are furnished generally for both, the material man has a lien on both the vessels, and may enforce it against either of them.

[See note at end of case.]

7. A creditor, who advances money to the builder on a mortgage of the vessel, succeeds to the place of the owner, and takes an interest in the vessel subject to the liens of the material men and mechanics.

In admiralty.

Mr. Shepley, for libellants.

Mr. Rand, for claimants.

WARE, District Judge. This is a libel by material men against the hull of a new ship, since named the Kearsarge, for the value of materials furnished. The case involves several questions of considerable importance to the ship-building interest in this state, some of which are novel and of no inconsiderable difficulty. Messrs. E. & E. Perkins of Biddeford, on the 9th of December, 1853, entered into a contract with Charles C. Sawyer and seven others, to build for them a new ship,—the builders to furnish all the materials and

¹ [Reported by Hon. Ashur Ware, District Judge.]
² [Reversed in Case No. 7,762.]

complete the vessel ready to receive her rigging, and to be delivered in the month of September following. The form and dimensions of the vessel are particularly set forth in the contract. By the agreement the builders were to get insurance on the vessel while she was on the stocks. The price agreed was $42 a ton, but the purchasers were to pay only for 650 tons admeasurement, if she even exceeded that tonnage. It was further agreed that the builders should give a mortgage of the vessel to the purchasers as a security for their advances, which was accordingly done in March, 1854. Two thirds of the price was to be paid while the work was in progress, and one third when she was completed and ready for delivery.

This contract having been made, the builders applied to Messrs. Lyman & Richardson, of this town, to supply them from time to time in the progress of the work with articles of ship-chandlery, which was accordingly done to the amount as charged in the bill of $944.-27. The builders having failed to pay, this libel is brought to enforce the lien for the price given by the statute of the state. It is not denied that the articles enumerated in the schedule annexed to the libel were furnished for and on account of this ship, together with another which the contractors were building at the same time, and in the same ship-yard. The influence which this fact, that the materials were furnished on account of two vessels and not of one only, has on the lien, will be considered after disposing of some particular objections which are independent of this.

A doubt was suggested at the argument, but not much insisted on, whether the benefit of the statute lien extended to a merchant who furnishes materials for the construction of a ship in the ordinary course of his business and trade. The words of the statute are: "Any ship-carpenter, caulker, blacksmith, joiner, or other person, who shall perform labor or furnish materials for or on account of any vessel building and standing on the stocks. or under repairs after having been launched, shall have a lien on such vessel for his wages or materials until four days after such vessel has been launched, or such repairs afterwards have been completed." The doubt suggested is, whether the law having enumerated certain classes of mechanics and laborers, the additional words 'or other person' ought not by a just interpretation of the law to be restricted to persons ejusdem generis. Though it may be probable that the legislature had principally in view the classes of persons named, as being the description of persons who most frequently needed this additional security, yet as they have used words which extend the remedy to all persons who render like services, it would be an unwarrantable construction of the law to limit its operation to any particular classes of the community.

An objection is also made to certain items in the account as not being covered by the statute lien. First, there is a charge for Manilla cordage, which did not go into the construction of the vessel, but was used in making derricks employed by the workmen in moving and raising the timber. Two other charges for augers used by the mechanics in doing the work are open to the same objection, and I think it is well founded. It is said that heretofore it has been the practice of auditors in settling the accounts to allow such charges, and that they have been passed without objection. At the same time it is admitted that such allowance passed sub silentio, cannot be urged as an authority when the objection is taken. It may be said, in a certain sense, that tools used by mechanics in doing the work, and procured for that purpose, are furnished for and on account of the vessel. But the reasonable intendment of the law extends only to such materials as are used, and in some sense consumed in the construction of the ship, and when completed, make part of her either as incorporated into the body of the vessel or as appurtenant to her. Thus the law may perhaps cover materials used in the construction of a boat built for the ship's use, and going with her as an appurtenance. This appears to me to be not only the natural and obvious intent of the law, but this construction is strengthened from the nature and operation of the lien. When, on a contract of sale, the law gives to the vendor a lien on the thing sold, as a security for the purchase-money, an imperfect title only passes to the vendee. But it becomes a perfect and unincumbered title when the price is paid. If the tools used by the mechanics, in the performance of the work, are, in the sense of the law, furnished for and on account of the vessel, by the payment of the price they would pass to the owners as appurtenant to the ship. Such, I think, cannot have been the intention of the legislature.

Another item in the account objected to is a charge of insurance paid by the libellants on a cargo of timber procured for the ship and used in her construction. Had such a charge been made by the vendor and furnisher of the materials, it might perhaps, like freight, be allowed as part of the cost of materials at the place of delivery, unless by the bargain they were to be delivered at the ship-yard of the builders, and then the insurance as well as freight would be involved in the price. But the insurance here was procured by a stranger, and if he can claim in this libel, it must be in the character of a material man. But the mere payment of insurance on a cargo of lumber, though actually furnished for the ship and used in the construction, cannot give him the character of a furnisher of materials in the sense of the law. It is not sufficient for a party to show that his money was contributed to building the ship and has gone into her construction. The lien is given by the statute not to persons generally who have contributed and furnished means towards building the ship, but to creditors of a certain description; and to entitle a party to the privilege, he must bring himself within the descriptive words of the statute as a furnisher of materials and labor. A person who merely pays the insurance on a cargo of materials, being an entire stranger to the contract for furnishing them, stands, in relation to the ship, merely as one who loans or advances money for her use, and whatever natural equity he may have against the vessel, he is not entitled to the statute lien.

Another objection is made which goes to the whole claim set up in the libel. It is that the materials were sold on credit. It is often stated in books of undoubted authority, in reference to this class of maritime liens, that giving credit is a waiver of the lien. But it is obvious that these general observations must be received with some limitation, since the credit is the sole foundation of the lien. The true formula, in which the doctrine is expressed, is that credit is a waiver when it is inconsistent with the lien. When it is not incompatible with the lien, whether it is waived or not is a question of intention. Where credit is given for a definite and fixed period, this is often held to be an implied waiver of the lien from the presumed intention of the parties, especially that of the vendor, to rely on the personal responsibility of the purchaser. This is, however, only a presumption, which, like all other presumptions which have their origin in the jurisprudence of the courts, and are not made absolute by the legislature, is liable to be overcome by evidence to the contrary. If the law limits the duration of the lien to a certain period, and the term of credit extends beyond this period, then the presumption practically becomes absolute, the credit being incompatible with the lien. And if the law limits the lien to an uncertain period, as in this case, till four days after the vessel is launched, and this expires before the time of payment arrives, the lien is gone. But if the day of payment arrives while the lien is in force, whether it is a waiver or not, is a question of fact and not of law, depending on the intention of the parties. And this intention, in the absence of direct proof, may be inferred from circumstances as in any other case. The presumption of jurisprudence raised by judicial tribunals may always be overcome by evidence. The courts have no authority to create absolute and conclusive presumptions that shall prevent a party from proving the truth; their office being to interpret and apply the law to the cases before them, and not to make the law. Nothing short of the supreme power of the legislature can create conclusive presumptions, juris et de jure as they are called, that shall debar a party from proving the truth

of his case. 10 Toullier Droit Civil, No. 32, etc.; Domat, Lois Civiles, liv. 3, tit. 6, § 4, No. 5.

In this case the items were charged in an open account without any express agreement as to the time of payment, but the understanding, as proved by one of the builders as well as by the clerk of the libellants, was that the payment was to be made when the vessel was finished, that is, before the extinction of the lien. By the contract of the builders with the purchasers of the ship their last payment was to be made at the same time. The natural inference from this credit, supposing it to have been an absolute credit for that time, seems to be not that the lien was waived, but that credit was given to the ship as well as to the party. But it appears that at the bottom of the account in the ledger there is a memorandum in pencil in these words, "average due December 20," and the argument is, that an absolute credit was given to that date, and this was after the lien had become extinct. This memorandum was made by the libellant's clerk, and his explanation is natural, and, to my mind, satisfactory. It is the practice of the libellants, on such accounts, to charge interest after they have been due six months, and the memorandum was made merely to show from what time interest was to be calculated, not that the debt was not demandable before that time. My opinion is that there was no intention to waive the lien, but that the vendors intended to rely upon it.

But the most embarrassing question remains to be considered. The lien is given when materials are furnished for or on account of any ship or vessel, apparently contemplating a single vessel. The Messrs. Perkins, when they bargained for and procured these materials, were building two ships in the same ship-yard, and the materials were furnished for both. They were so charged in the books of the libellants, and the credit was given not more to one than the other. The two were of the same size and model, the same moulds being used for both. The lien is given to the furnisher of the materials whoever may be the owner, whether the builder who contracts for the materials, or the person for whom the ship is built, or one who may purchase it while it is in the progress of construction. The statute may be said to look to the ship as a principal debtor, though the owner or builder is also personally liable, and it is a lien against all the world. It is a lien beneficial to the builder as well as the material men and mechanics. It strengthens the credit of builders, and enables them to obtain their materials on easier terms, a consideration not to be overlooked in this state, where there is so large an amount of capital and industry employed in this business, and where builders, being usually men of limited means, require this collateral support of their credit. The statute, being a remedial and beneficial statute, ought not to receive a strict and narrow construction, which would contract its remedies and restrict its benefits, but be allowed its full and fair operation. The words of the law look, it is true, to a single vessel; but when the materials are furnished for two, building as these were by the same builders, there does not seem to be any reasonable doubt that the case is within the policy of the law and the intention of the legislature. Nor is there any difficulty in giving the remedy when they are owned by the same persons.

But this case is complicated with another difficulty. The two vessels were both under contract of sale, while they were on the stocks, and to different purchasers. At the time when they were completed and ready to be launched, the builders, who procured the materials, had parted with their whole interest in them, at least in the one libelled. The materials having been furnished on the credit of both, the difficulty and embarrassment arises, which was insisted upon at the argument. In giving effect to the lien, on what principle must the court proceed in making the apportionment? One of the builders, who was examined as a witness, testified as to several items in the account, that they were procured for, and used in the construction of this vessel; and though the credit was given to both, these may possibly be said to come within the meaning of the statute, as being for or on account of this vessel. But in regard to the greater number of charges, they were furnished for both and used in common for both. The libellants, in making up their schedule annexed to the libel charged one half of the whole bill to this vessel, leaving the other half as a charge on the other.

The present case may perhaps be considered as simplified by the fact that both vessels were of the same size and model, and that the materials may fairly be presumed to have been appropriated about equally between them, as the libellants assume to be the fact in this suit. But though this principle might perhaps be equitably applied to the present case, it might not afford a safe rule for cases analogous to it in their general character, but differing in their special facts. Suppose that the vessels were of different size and form, or put a still more complicated case of more than two vessels being built at the same time, all differing in form and tonnage, and the materials furnished, as in this case, on the credit of all, and all belonging to different owners, though built by the same builders; there would be a real difficulty in making the apportionment, if it in fact be necessary for the material men to show the appropriation. Whether this be necessary, in the case supposed, in order to save the lien, is a question of no inconsiderable importance, provided the statute lien extends to a case where the materials are furnished for more than one vessel in the course of construction at the same time. The lien is given where the materials are furnished for, and on account of the vessel.

Undoubtedly it may be necessary for the material men to show that they were such as are suitable to the object, and of such an amount as might be supposed to be required for that purpose. But the act does not go on to add, used for, and in the construction of the vessel. All that the words of the statute require is, that they should be furnished for and on account of the vessel.

Nor does it appear to me that more is required by the policy and object of the law. If the material men were required to prove the appropriation of the materials, and follow them into the very ship to which they were applied, in a case like the present, when more than one ship was being built, it would be requiring of them, as the evidence in this case shows, what it would be impossible for them to do. It would be practically equivalent to annulling the lien in all cases like the present. Where materials are furnished for more than one vessel, being built at the same time, and by the same builders, if the law extends to such a case, then the lien extends to the whole. This statute lien, for the time that it endures, four days after the vessel is launched, appears to me to constitute a legal hypothecation; and an hypothecation, like a mortgage, from which it differs only in name, from its own nature is entire in the totality of the whole mass of property hypothecated, and entire in every part. "Tota in toto et tota in qualibet parte." Code, 8, 28, 6. "Propter indivisam causam pignoris." Dig. 21, 2, 65; Dig. 20, 1, 19; Domat, liv. 3, tit. 1, § 1, No. 18; 6 Touiller, Nos. 762, 763. Being a jus in re, and in its nature indivisible, it adheres in its totality to every portion of the hypothecated property, as a security for the creditor, whoever may be the owner, and unaffected by any change of ownership after the lien attaches. It is like the hypothecation of the ship and freight for wages. The seamen in a proceeding in rem, for their wages, are not obliged to proceed against both jointly, but may recover the whole from either separately, though the ship may belong to one party, and the freight to another. If this analogy is followed, it removes all the difficulty of apportionment. The material men are not obliged to proceed against all for the total debt, nor against each separately for its ratable part, but may recover the whole debt from any one, and leave the equities between the different owners to be settled among themselves. Decree for the libellant.

NOTE. The decree in this case was reversed by the circuit court on appeal [Case No. 7,762], on the ground that the statute, giving a lien where materials are furnished for a vessel, is to be strictly construed, and does not apply, if they are furnished for two vessels together, and it does not appear to which they were appropriated. It was further held, that the purchaser, by afterwards using them in either vessel, made an appropriation, which gave the seller a lien, under the statute, on that vessel. And the case was sent to an assessor to ascertain what part of the materials were used in building the Kearsarge.